SHAW *against* THE TURNPIKE COMPANY.

2 PW 454
29 SC ¹565

When a contract is entire, before any recovery can be had of the consideration money, the plaintiff must prove, that he has performed, or is ready to perform his part of the contract; or that the performance was prevented by the defendant.

Time may be an essential part of a contract, either from the nature of the transaction, or the subject-matter of the agreement.

Time may be made a material and essential part of a contract, by the express under· taking of the parties, as well in equity as at law; and when so, must be as strictly observed in equity as at law.

Either party may waive any right introduced into or provided by the contract, either expressly or tacitly, by acts or declarations, fairly indicating a relinquishment of any provision or part of a provision, and without the performance of which, unless relinquished or waived, a recovery could not be had.    In all such cases the facts are for the determination of the jury; but whether, if established, the amount to a waiver, is a question of law.

Appeal from the Circuit Court of *Mifflin* county, held by *Justice Huston.*

, This was an action of debt, brought by *William Shaw* against the *Lewistown and Kishacoquillas Turnpike Company.*

The plaintiff filed the following statement:

"The plaintiff's demand, in this suit, is founded on the following instrument of writing, a copy of which is hereto annexed, and made part of this statement, and for work and labor for the *Lew-istown* and *Kishacoquillas* Turnpike Company, by *Robert Gam-ble,* in his life-time, and *William Shaw,* plaintiff, who survived *Robert Gamble,* in pursuance of the aforesaid instrument of wri·ting, 'Articles of agreement made and concluded this third day of June, in the year of our Lord one thousand eight hundred and fif-teen, between the president, managers and company of the *Lewis-town* and *Kishacoquillas* turnpike road of the one part, and *Wil-liam Shaw* and *Robert Gamble* of the other part.

'Witnesseth, that the said *William Shaw* and *Robert Gamble,* for, and in consideration, of the covenants hereafter mentioned, on the part of the said president, managers and company of the said road, do, by these presents, for themselves, their heirs, executors and administrators, covenant and agree, to, and with the said pres-ident, managers and company, their successors and assigns, that

(Shaw *v.* The Turnpike Company.)

the said *William Shaw* and *Robert Gamble,* will, at or before the first day of September, one thousand eight hundred and eighteen, make, and finish, in a complete, substantial and workmanlike manner, that part of said road, beginning at the court house in the borough of *Lewistown,* to *Kelley's* run, on the tract or route laid down by the president and managers, cutting, moving out and opening said road, fifty feet wide, and by cutting the hills and filling up the low places, so that no part of said road shall rise more than an elevation of four degrees, and cut down all small knobs, rises or hillocks in said road—and twenty-one feet in width in said road to be paved or bedded with stone, to the thickness of twelve inches in the middle, and gradually diminishing in thickness to nine at the sides—and the stones on the paved part, shall be broken throughout, so that all the particles thereof will pass through a ring of three inches in diameter    The bed of the paved part of the road, previous to the stones being put on, shall be prepared as follows: the sides shall be cut nine inches below the surface, so as to form a shoulder to bed the stones against, and the earth removed therefrom, shall be thrown into the centre of said road, so as to form a convexity, so that the middle of the road may be from six to nine inches higher than the sides—on the side or summer road, all trees and stumps or large stones to be removed or dug out, so as to bring them to an even surface, and on or near to a level with the paved part of the road, but not in any one instance to be lower or more than six inches higher; one summer road to be made on each side of the paved part of said road, from six to eight feet wide; and at all small streams where the water accumulates in wet weather and which will require bridges, there is to be paved a gutter to extend across the whole road fifty feet, sufficient to carry off the water, and to be shaped so as to prevent any sudden shock to carriages crossing the same—and the said *William Shaw* and *Robert Gamble,* are to procure the materials for making said road at their own expense, and to do as little injury to the lands, woods and property of the adjoining inhabitants, in digging up, grubbing or hauling stone or other materials for making the road as possible, and when the pavement of stone is completed, as aforesaid, to clay or sand over the same, so as to render the travelling convenient and commodious.    And the said president, managers and company of the said road, covenant and agree to, and with the said *William Shaw* and *Robert Gamble,* their heirs, executors and administrators, that they will, when any section of the road paved and made in the manner above stated is completed, being forty perches or more, in any one place, to take the same off their hands—and furthermore, the said president, managers and company, agree to pay to the said *William Shaw* and *Robert Gamble* for, and in consideration,

(Shaw *v.* The Turnpike Company.)

that they shall make the road, as aforesaid, complete, and in a workmanlike manner, as before described, and at, or within the term above stated and agreed upon, eleven dollars per perch, from the court house and thirteen dollars and fifty cents per perch for the remainder of the road between the end of the first mile and *Kelley's* run, to be paid in the following manner, to wit: when they shall make it appear, that the work has progressed to the amount of one thousand dollars, they shall afterwards be paid as often as they shall call for money, so as to keep the work, at all times, one thousand dollars in advance of the money received, until the whole road is completed and then they shall be paid the balance—it is to be understood, that the president and managers are to pay the price of materials to the owners, and they are to be brought to the ground by the contractors."

Then followed a statement of the work, labor and services done and performed by the plaintiff, amounting to $9473 50, and the usual certificate, that that sum was due.

*The Turnpike Company* made defence on two grounds—first, payments made to plaintiff while the work progressed, and second, that the contract was entire, and the plaintiff could not recover at all, unless he would set out, in his declaration, and prove that he had performed the contract on his part, before suit brought.

The evidence established the fact, that the contract had not been complied with by the plaintiff, in these particulars,—that the road had not been opened fifty feet wide, nor had the summer roads been made at all in many places.    The plaintiff answered to these objections, that inasmuch as when the road was stoned twenty-one feet wide, the turnpike company took possession of it, erected gates upon it, and took toll from persons travelling upon it; he therefore contended that he was entitled to recover from the defendants the actual value of his labor, bestowed upon the road, according to the terms of the contract.

The jury found a verdict for the plaintiff, for $1720 91, and a motion for a new trial being overruled, for the purpose of having the question argued and settled in this court the defendant appealed.

*Potter* for appellants.

The act of incorporation only required that the stone road should be made in order to entitle the company to receive toll; but it was perfectly competent for them to contract for the making of side-roads, in addition to the stone road; by which its usefulness would be increased; and the company might legally take toll from travellers, when the stone road alone was made.    Certainly this would not exonerate the contractor from his engagement to make the side

(Shaw *v.* The Turnpike Company.)

roads, and otherwise complete his contract; nor could it be constru-ed into a waiver by the company, of the necessity on the part of the contractor, to make the road as he engaged to do. The plaintiff did not allege in his declaration, nor attempt to prove, that he had performed his contract; nor did he allege a waiver, or attempt to prove the assent of the company, in the only way known to the law in which they can assent, to a waiver of the terms of the contract. Cited *Pedan* v. *Hopkins,* 13 *Serg. & Rawle,* 47. *Cunningham* v. *Morrell,* 10 *Johns. Rep.*203. *McMillen* v. *Vanderlip,* 12 *Johns. Rep.* 165. *Thorpe* v. *White,* 13 *Johns. Rep.* 53. *Faxon* v. *Mansfield,* 2 *Mass.* 147. *Lancashire* v. *Killingworth,* 3 *Salk.* 342. 2 *Saund.* 352 note 3.

*Blanchard* and *Alexander* for appellee.

There are certain actions on contract in which a compliance to the letter must be proved; others when there may be a recover without a literal compliance. When the main object of the contract is fulfilled, but secondary objects not completed, there may be a recovery, subject to the power of the jury to deduct from the amount a rateable proportion. The main object here was to make the stone road, so as to enable the company to take toll: and when this was done, the company took possession of the road and used it for all the purposes originally intended. This was virtually a waiver by the company of the necessity of further completion by the contractor. Here the company received the benefit of the workman's labor, which amounts *ipso facto,* to a waiver, and makes the company liable to the payment of a *pro rata* sum. *Heck.* v. *Shener,* 4 *Serg. & Rawle,* 249. *Decamp* v. *Fay,* 5 *Serg. & Rawle,* 323. *Stoddart* v. *Smith,* 5 *Bin.* 355. *Obermire* v. *Nichols,* 6 *Bin.* 164. 1 *Saund.* 320, n. 1 The defendants are now in possession of, and enjoying the fruits of the plaintiff's labor, and it would be against conscience that they should not pay for it. This court will not grant a new trial, unless injustice has been done.

*Hale* in reply.

In all the cases read, where the specific performance of a contract was enforced, although the party seeking such enforcement, had not himself complied, are where it was not in the *power* of such party to perform. Not so here. If a party may perform *a part* of his contract, and recover compensation for the part performed, he may perform that part which is most acceptable to him, and recover on a *quantum meruit;* thereby destroying the contract, and recover upon terms never imposed.

(Shaw *v.* The Turnpike Company.)

The opinion of the court was delivered by

Ross, J.—The only question presented for the consideration of the court in this case is, whether the plaintiff can support this action without shewing that he has performed or offered to perform his part of the contract, or that the defendant had waived the performance thereof. It was contended on the trial by the counsel for the defendant, that the contract being entire, the plaintiff could not recover without stating and proving, that he had performed, or was ready and offered to perform, but that the performance was prevented by the other party. The judge, who tried this case, declined expressing any decided opinion on this point, but refused to arrest the cause at that stage of the proceedings; remarking to the counsel, "you shall have the full benefit of the exception, if necessary, but I will not arrest the cause now; I will consider the points against you." The question is therefore, now before this court for decision.

If it be decided according to the terms of the written contract alone, as set forth in the plaintiff's statement, he clearly is not entitled to recover, because it is an entire contract: the general rule being that an entire contract cannot be apportioned, *Chit. on Con.* 273. The plaintiff, however, in this case attempted to apportion the contract. He says, that having made and bedded the road twenty-one feet wide according to the stipulation contained in the agreement, and it having been accepted by the company, and licensed by the Governor, he has a right to recover the full amount engaged to be paid him on the completion of the whole road, without making or finishing the side roads, or opening the road fifty feet wide, according to his contracts in the article of agreement. The construction of the contract must be collected from the instrument itself. There is no obscurity in ~~an~~ any of its provisions. The duties to be performed, and the time and manner, in which he shall receive compensation, are clearly designated. The rule, that where the parties have entered into an express contract, no other can be implied, has existed so long, and been so repeatedly recognized by judicial decisions, as to have become an axiom in the law. 6 *T. Rep.* 324.

A Court of Chancery never professes to bind a man to any agreement, which he has not substantially entered into, 14 *Vez.* 407. *Jer. Eq.* 467. If the verdict in this case should be sustained, it will bind the company to pay money, which by their contract, they were not bound to do, until that part of the plaintiff's contract was completed, which remains unfinished. By the article of greement, one thousand dollars was to remain unpaid, until the whole contract should be performed. And it is conceded, that if the inter-

(Shaw *v.* The Turnpike Company.)

est be deducted from $1700 dollars, (the amount of the verdict,) the balance will not amount to one thousand dollars.  Yet by the contract, that amount of work on the road, was to be always kept in advance, until the whole should be completed.  The whole road has never been completed, and the plaintiff is not entitled to recover any thing, unless, he can shew there is more in arrear than one thousand dollars.

This principle is fully established by the cases cited during the argument.  I will advert to one of them, which seems to me decisive of the point under consideration.  In 13 *Serg. & Rawle,* 47, *Pedan et. al.* v. *Hopkins,* the question was, whether if a person contracts to build a bridge or bridges, the work must be finished before the plaintiff can recover.  *Chief Justice Tilghman,* giving the opinion of the court, says "that he is not entitled to recover, unless the work was finished, or he was prevented from finishing it by the act or consent of the defendants."  In the present case, the plaintiff has not finished the road according to the terms of the contract, and he has brought the suit for the whole amount, which would have been due, if he had complied with the contract.  He cannot, however, recover until he has finished the work.

On the subject of apportioning an entire contract, a strong case may be found in 1 *Salk.* 65.  It was an action of debt, in which the plaintiff declared upon an instrument of writing, whereby the defendant's testator had authorized the plaintiff's testator to recover his rents, and promised to pay him £100 per annum for his service.  The defendant's testator died three-quarters of a year after, during which time the service had been performed; and the plaintiff demanded seventy-five pounds for the three-quarters of the year.  It was decided, that being one consideration and one debt, it could not be divided.  The plaintiff was not entitled to recover.  In illustration of the position, that where the contract is entire, it cannot be apportioned, see also 1 *Swans. Rep.* 438—9, and notes. 1 *Saund. Rep.* 288, *note* 3.  *Bro. ab. apportion. fol.* 13, 22, 26. 3 *Vin.* 8, 9.  *Co. Lit.* 150, a.  1 *Ld. Ray.* 360, *Hawks.* v. *Cardy.* 1 *Stra.* 648, *Weaver* v. *Borough.*  *Doug.* 23, *Weston* v. *Downes,* *Cowp.* 818, *Powers* v. *Wills.* 3 *Mad.* 153. 2 *Mass. Rep.* 147. 1 *Carth.* 466.

In certain cases by the agreement of the parties, time may be made of the essence of a contract. 3 *Maddox,* 447; 6 *Mad.* 26; *Jeremy on Eq.* 461; in which case it must be observed as strictly as at law.  In other cases time is necessarily of the essence of a contract, from the nature of the subject-matter of the bargain. 1 *Term. Rep.* 79.  Thus in the sale of a reversion, time is of the essence of the contract, because it may be contemplated, that the vendor is in want of the consideration money, and to whom therefore it is

of importance, that the principal should be paid at the time appoin-
ted.   *Newman* v. *Rogers*, 4 *Bro. Chan.* 391.   So also where
the value of the property is peculiarly liable to fluctuation, as na-
tional stock:—or where the agreement is to sell at the valuation to
be made by individuals named within a certain period, time is of
the essence of the contract.   *Morse* v. *Merish*, 6 *Mad.* 26.   In
the case before us, it may indeed be said that time is of the essence
of the contract, from the very nature of the subject-matter of the
agreement, being to do that, which the act of assembly required to
be done by a fixed and certain day.   The provisions of the act of
assembly, the subject-matter of those provisions, and the covenants
of the parties, all tend to prove that time was an essential part of
the contract.   In fact, the parties themselves by their agreement
seem to have made it of the essence of the contract.   The act in-
corporating the company, was passed the the 25th day of Febru-
ary, 1813.   The plaintiff on the 3d of June, 1815, entered into
articles of agreement with the defendants, to make the road as
therein stipulated, on or before the first day of September, 1818.
The company agree to pay the plaintiff, "for and in consideration,
that they shall make the road as aforesaid,—complete and in a
workman-like manner as before described, and *at or within the
term* above stated and agreed upon." When the *whole* road should
be completed, then the plaintiff was to recieve the balance.   Time
is thus made essential in order to secure to the company the rights
and privileges granted by the act of assembly.   By the 5th section
thereof, it is expressly provided, "that if the company shall not
proceed to carry on the said work in *three* years after the passing
of the act, or shall not within seven years afterwards, complete the
said road, &c. all and singular the rights and liberties, &c. shall re-
vert to the commonwealth."   Thus positively fixing a time with-
in which the road must be finished, and annexing a forfeiture on
failure to do so.   Whether time was originally of the essence of a
contract, and whether, if it were, it continued to be so, are ques-
tions depending on evidence.   *Levy* v. *Linde*, 3 *Mer.* 81.   This
matter has been adverted to, as forming a point of much considera-
tion in the future trial of this case.

The plaintiff has endeavored to assimilate this case to contracts
in reference to real estate.   But there is little or no resemblance
between them.   The courts of equity, never interfere in contracts
about personal chattels, either to enforce, rescind or mitigate their
obligations—unless indeed in a very few cases, in which from an
artificial value being attached, a fair estimation thereof is not to be
expected in the ordinary transactions of society, and in lieu of which
therefore, it is probable, that adequate compensation, by way of
damages, would not be given by a jury.   Thus as in the case of

( Shaw *v.* The Turnpike Company.)

articles curiously engraved, valuable paintings, dresses, books, tools, &c. of a society of free-masons.   So of a cherry stone finely carved, and other articles possessing merely an artificial value.  3 *Vez.* 71. *Jeremy Eq.* 467.   1 *Vern.* 273.   3 *Pr. Wms.* 390.  *Ambler,* 77. 6 *Vez.* 773, *Lloyd* v. *Loaming.*

Inadequacy of price of itself is not a sufficient ground for Chancery to interfere, unless it is so gross as to furnish evidence of fraud.

From a careful examination of the authorities applicable to this case, the following positions may be deduced as general principles of the law.

1. That when a contract is entire, before any recovery can be had of the consideration money, the plaintiff must prove, that he has performed, or is ready to perform his part of the contract, or that the performance was prevented by the defendant.

2. That time may be an essential part of the contract, either from the nature of the transaction, or the subject-matter of the agreement.

3. Time may be made a material and essential part of a contract, by the express undertaking of the parties, as well in equity as in law: and when so, must be as strictly observed in equity as at law.

4. Either party may waive any right, introduced into or provided by the contract, either expressly or tacitly, by acts or declarations fairly indicating a relinquishment of any provision or part of a provision; and without the performance of which, unless relinquished or waived, a recovery could not be had.   But in all such cases, the facts are for the determination of the jury, but whether, if established, they amount to a waiver, is a question of law.   It would be dangerous for the jury to decide, whether the party had abandoned his rights.   This power can only be safely entrusted to the courts, who alone can, in the exercise of it, give uniformity to the law.

Judgment reversed, and a new trial awarded.